Bryan C. BOSTICK, Appellant,

v.

UNITED STATES, Appellee.

No. 90–915.

District of Columbia Court of Appeals.

Argued Oct. 29, 1991.

Decided April 10, 1992.

Samia Fam, Public Defender Service, with whom James Klein, Public Defender Service, was on the brief, for appellant.

David H. Baum, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., John R. Fisher, Thomas J. Tourish, Jr. and William J. Hochul, Asst. U.S. Attys., were on the brief, for appellee.

Before TERRY, STEADMAN and SCHWELB, Associate Judges.

STEADMAN, Associate Judge:

This appeal arises from the conviction of Bryan Bostick for second degree murder while armed under D.C.Code §§ 22–2403 and –3202 (1989).[1] Appellant argues, *inter alia*, that the trial court committed reversible error by refusing to include an instruction on provocation as part of the charge to the jury on the count of second degree murder. We agree.

I.

Appellant was convicted in the slaying of Nathaniel Smith, known to his friends as Bubbles, a sixteen-year-old bystander at the scene of a violent encounter in front of the apartment building in which he lived.[2] At the start, a fight was looming between Shelton Troublefield and Ryan Phoenix, also known as Knuckles. It was apparently the continuation of an earlier fistfight. This time, the younger, smaller Knuckles

---

1. Bostick was also convicted of carrying a pistol without a license under D.C.Code § 22–3204 (1989).

2. The evidence as to the details of the encounter was conflicting. Several witnesses at the scene

testified, and appellant testified in his own behalf. In determining whether an instruction should be given, the facts must be viewed in the light most favorable to the defendant. *Reid v. United States*, 581 A.2d 359, 367 (D.C.1990).

had asked appellant Bostick to back him up, for protection.[3]

During the confrontation, Vinnie ("Tony") McFadden, an older friend of Troublefield, came out of the building and told the pugilists to desist. At about the same time, Bostick interposed himself, encouraging Knuckles to knock Troublefield out, blocking the latter's path of retreat into the building. According to all the government eyewitnesses, Tony McFadden then grabbed Bostick by the neck, lifting him off the ground with one hand. At the same time, with his other hand, McFadden drew a .22 caliber gun and discharged one to three shots into the air. Bostick managed to free himself from McFadden's grip and fled a very short distance before turning and firing several shots back toward the doorway of the building, where McFadden was still standing.[4] McFadden testified that he continued to fire his weapon after Bostick had extricated himself. Appellant testified, after he got away from McFadden, "Like I say, I was running for my life. I just ain't want to get shot.... I'm running, I'm scared." According to forensics evidence, one .22 caliber shell, fired from a distance of at least eighteen inches, struck and killed Bubbles.[5]

## II.

"'As a general proposition a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor.'" *Reid v. United States*, 581 A.2d 359, 367 (D.C.1990) (quoting *Adams v. United States*, 558 A.2d 348, 349 (D.C.1989) (quoting in turn *Mathews v. United States*, 485 U.S. 58, 63, 108 S.Ct. 883, 887, 99 L.Ed.2d 54 (1988)). Moreover, in the *Mathews* decision, the Supreme Court made clear that the defendant's entitlement to such an instruction is not canceled or diminished by the claim of inconsistent, or even contradictory, defenses, even those inconsistent with the defendant's testimony.[6] We have followed this *Mathews* holding in several cases. *Guillard v. United States*, 596 A.2d 60, 62–64 (D.C.1991); *Reid v. United States, supra; Adams v. United States, supra; Gray v. United States*, 549 A.2d 347, 349 n. 2 (D.C. 1988).[7] To determine whether a defense instruction was properly denied, we review the evidence in the light most favorable to the defendant, but not so favorable as to have required the jury to engage in "bi-

---

**3.** At the time, Troublefield was in his early twenties; Knuckles and Bostick were teenagers.

**4.** The corroborated testimony that Bostick indeed fired a weapon in response is obviously *not evidence viewed in a light most favorable to* defendant with respect to his defense of blanket denial. However, it is properly considered with respect to the (inconsistent) defense of adequate provocation. *See* note 2, *supra.*

**5.** No gun was recovered from either McFadden or Bostick. Appellant's first defense at trial was based on denial of firing a gun and on the theory that the fatal shot came from McFadden's .22 caliber gun, or alternatively from that of an unseen assassin across the street, where witnesses testified they saw sparks. No witness could pinpoint exactly when during the exchange of gunfire Bubbles was struck. There was no evidence to establish McFadden's distance from Bubbles when he discharged his gun. As discussed hereafter, the fact that Bostick made no self-defense claim in his testimony and indeed denied having a gun does not preclude the giving of the instruction.

**6.** In *Mathews*, in affirming a defendant's right to assert inconsistent defenses, the Supreme

Court relied in part on *Stevenson v. United States*, 162 U.S. 313, 16 S.Ct. 839, 40 L.Ed. 980 (1896) (defendant entitled to an instruction on the affirmative defense of self-defense even though inconsistent with the claim that the defendant killed in the heat of passion). The Court specifically rejected the argument against inconsistent defenses that allowing them would encourage or sanction perjury. *Mathews, supra,* 485 U.S. at 65–66, 108 S.Ct. at 888. In the case before us, it appears that the trial court denied the requested instruction because of its inconsistency with the basic theory of defense.

**7.** While these cases deal with self-defense and alibi, which fully exonerate a defendant, the same principle operates in the giving of instructions on lesser-included offenses, *see Price v. United States*, 602 A.2d 641, (D.C.1992) and cases cited, and to defenses of mitigation, as here. The concept appears to have fairly deep roots in this jurisdiction. *See Womack v. United States*, 119 U.S.App.D.C. 40, 336 F.2d 959 (1964) ("a defendant is entitled to an instruction on any issue fairly raised by the evidence, whether or not consistent with the defendant's testimony or the defense trial theory").

zarre reconstruction[s] of the evidence." *Adams, supra,* 558 A.2d at 349; *Wood v. United States,* 472 A.2d 408, 410 (D.C. 1984).

■ In the instant case, sufficient evidence of provocation was presented, including testimony from the government's key witnesses, to support the requested defense instruction on mitigation of malice,[8] malice being an essential element of second degree murder to be proved by the government.[9] *Comber v. United States,* 584 A.2d 26, 41 (D.C.1990) (en banc) ("The absence of justification, excuse, or mitigation is thus an essential component of malice, and in turn of second-degree murder, on which the government bears the ultimate burden of persuasion"); *United States v. Alexander,* 152 U.S.App.D.C. 371, 391, 471 F.2d 923, 943 (1972) ("[I]t should be explained [to the jury] that provocation is *not* an element of manslaughter (whether voluntary or involuntary), but a *defense* to second degree murder" (emphasis in original)), *cert. denied,* 409 U.S. 1044, 93 S.Ct. 541, 34 L.Ed.2d 494 (1972). Put differently, although the absence of adequate provocation is not an element of second degree murder, its presence is a defense to that

charge. However, the prosecution's obligation to disprove "mitigation arises only when there is some evidence of one or more of these circumstances in the case.... Accordingly, a jury need not be instructed on the issue[ ] of ... mitigation unless either the government or defense case has generated some evidence of [that] factor[ ]." *Comber, supra,* 584 A.2d at 41 n. 17 (citations omitted); *Brown v. United States,* 584 A.2d 537, 543 (D.C.1990) ("If there is sufficient evidence of provocation to go to the jury, the burden remains on the government to prove malice ... and to prove the absence of adequate provocation beyond a reasonable doubt") Given the evidence of provocation here, the corresponding instruction should have been given and the government should have been required to disprove mitigation.

The standard jury instruction on provocation as a defense to second degree murder explains that the " '[p]rovocation' must be such as might naturally induce a reasonable person in the passion of the moment to lose self-control and commit the act on impulse and without reflection. A blow or other personal violence or imminent threat of violence may constitute adequate provo-

---

**8.** The standard instruction on provocation reads in relevant part:

[T]he Government must prove beyond a reasonable doubt that the defendant did not injure the deceased in the heat of passion, caused by adequate provocation. 'Heat of passion' includes rage, resentment, anger, terror, and fear. Heat of passion may be produced by fear as well as rage. "Provocation" must be such as might naturally induce a reasonable person in the passion of the moment to lose self-control and commit the act on impulse and without reflection. A blow or other personal violence or imminent threat of violence may constitute adequate provocation. But trivial or slight provocation entirely disproportionate to the violence of the retaliation, is not adequate provocation. Mere words standing alone, no matter how insulting, offensive or abusive, are not adequate provocation.

Criminal Jury Instructions for the District of Columbia, No. 4.23 (3d ed. 1978) ("Murder in the Second Degree").

The fact that the trial court included those portions of the standard instruction on second-degree murder that a malicious act must be done "without adequate provocation, justification or excuse" and that the killing must occur

"without circumstances serving to mitigate or justify the act" is insufficient where the defendant specifically requests the full instruction on provocation, including the requisite burden of proof on the government.

**9.** "In this jurisdiction, a homicide constitutes voluntary manslaughter where the perpetrator kills with a state of mind which, but for the presence of legally recognized mitigating circumstances, would render the killing murder." *Comber, supra,* 584 A.2d at 42; *West v. United States,* 499 A.2d 860, 864 (D.C.1985) ("Voluntary manslaughter is the unlawful or unexcused killing of a human being without malice"); *Austin v. United States,* 127 U.S.App.D.C. 180, 188, 382 F.2d 129, 137 (1967) ("An unlawful killing in the sudden heat of passion—whether produced by rage, resentment, anger, terror or fear—is reduced from murder to manslaughter only if there was adequate provocation, such as might naturally induce a reasonable man in the passion of the moment to lose self-control and commit the act on impulse and without reflection") Thus, the presence of adequate provocation, which mitigates malice, serves to reduce second degree murder to voluntary manslaughter, and thereby constitutes a defense to the former.

cation." Criminal Jury Instructions for the District of Columbia, No. 4.23 (3d ed. 1978); *see also Alexander v. United States, supra,* 152 U.S.App.D.C. at 394–95, 471 F.2d at 946–47. While there is no list of "the specific categories of acceptable or unacceptable provocatory conduct," the caselaw assessing the sufficiency of provocation has considered a number of factors, for example, the means and severity of the provocation, the proportionality of the retaliation, and the timing of the retaliation. *Brown, supra,* 584 A.2d at 542; *see, e.g., United States v. Wharton,* 139 U.S.App. D.C. 293, 301, 433 F.2d 451, 458 (1970) (where appellant's universally controverted testimony was that victim had slugged him in the mouth before the retaliatory shooting, issue of adequate provocation was properly for the jury to decide); *Kinard v. United States,* 68 App.D.C. 250, 96 F.2d 522 (1938) (contradicted evidence that decedent wife pursued appellant with knife before killing sufficient to support adequate provocation and manslaughter instructions); *Carter v. State,* 66 Md.App. 567, 505 A.2d 545 (1986) (evidence that victim drew knife on appellant during "altercation" and "tussle" sufficient to support adequate provocation instruction); *Whitehead v. State,* 9 Md.App. 7, 262 A.2d 316, 319 (1970) ("There is adequate provocation when there is a mutual quarrel or combat ... and in such situations the question of which one actually strikes the first blow is not controlling") (internal quotation marks and citation omitted); *cf. West v. United States,* 499 A.2d 860 (D.C.1985) (as a matter of law, an unarmed victim's act of walk-

ing toward armed defendant while they exchanged words was not the sort of provocative act that would cause reasonable person to lose control and act without reflection); *Jamison v. United States,* 373 A.2d 594, 596 (D.C.1977) (where defendant claimed he was provoked by victim's repeated robberies, but where defendant had ample time to reflect and "cool down," evidence insufficient for manslaughter instruction); *Nicholson v. United States,* 368 A.2d 561, 565 (D.C.1977) (mere words or other "trivial or slight provocation entirely disproportionate to the violence of the retaliation, is not adequate provocation"); *Hurt v. United States,* 337 A.2d 215, 218 (D.C.1975) (provocation inadequate to merit instruction where only possible provocation occurred forty-five minutes prior to shooting).

In the case before us, the testimony of government witnesses themselves confirms that McFadden's provocative conduct included physical battery of appellant and assaulting him with a deadly weapon. The escalation of violence was tragic, but not totally surprising. McFadden gripped appellant by the throat and lifted him off the ground, while discharging a gun close by.[10] This provocation went far beyond "mere words" to physical violence by McFadden against appellant's person, and appellant's response was nearly instantaneous once he pried himself loose and began to flee, fearing for his life, under possibly imagined direct fire. Viewing the facts in this light, a reasonable jury without resorting to "convolutions of logic" or "bizarre recon-

---

**10.** Indeed, the government concedes in its brief that McFadden's actions "might fairly be characterized as provocative behavior." However, to negate this potential mitigation, the government adverts to the fact that Bostick came to the scene with a gun, from which it infers malice. But that inference is not compelled. Criminal Jury Instructions for the District of Columbia, No. 4.23 (3d ed. 1978) ("You are not required to infer malice from the use of such a weapon, but you may do so if you deem it appropriate"); *United States v. Wharton, supra,* 433 F.2d at 456 (disclaiming a legally compelled inference or presumption of malice from the use of a deadly weapon).

Moreover, by stating that appellant "brought his 'malice' with him" to the scene, the govern-

ment also implies that appellant himself was the aggressor, that is to say, the original "provocateur." But it is beyond question that " '[m]ere words standing alone, no matter how insulting, offensive, or abusive, are not adequate provocation.' " *West, supra,* 499 A.2d at 865 (quoting *Hurt v. United States,* 337 A.2d 215, 218 (D.C. 1975)); *see also* Criminal Jury Instructions for the District of Columbia, No. 5.17 B (3d ed. 1978) ("Mere words without more by the defendant, however, do not constitute aggression or provocation"). The uncontroverted evidence is that McFadden assaulted appellant without any physical provocation; it was McFadden who escalated their conflict from the realm of mere posturing and threats to the realm of physical violence and the use of deadly force.

struction[s]," *Adams, supra,* 558 A.2d at 349, could find that the defendant reacted (in the language of the standard instruction) "in the passion of the moment ... on impulse and without reflection" in response to McFadden's provocative conduct. Therefore, the instruction should have been given, and the jury should have been allowed to decide the issue of provocation.[11]

The government also contended at trial, and argues on appeal, that when the defendant is charged with second degree murder an instruction on provocation may be given only if an instruction on the lesser-included offense of voluntary manslaughter is also given. Because in this case neither side requested the voluntary manslaughter instruction, the government argues, an instruction on provocation was rightly denied. However, the government has produced no authority in caselaw to support this proposition.[12] To the contrary, in this jurisdiction, it has been said that "the trial judge should withhold charging on [a] lesser included offense unless one of the parties requests it, since that charge is not inevitably required in our trials, but is an issue best resolved, in our adversary system by permitting counsel to decide on tactics." *Walker v. United States,* 135 U.S.App.D.C. 280, 283, 418 F.2d 1116, 1119 (1969).[13] Had the trial court given the proposed instruction on provocation, either side might properly have requested the instruction on manslaughter as a lesser included offense under second degree murder according to its own tactical plan. However, the absence of such a request is irrelevant in evaluating the appropriateness of including language on mitigation of malice in instructing the jury on an offense to which mitigation is a defense. *Comber v. United States, supra.*[14]

Accordingly, the conviction of second-degree murder appealed from must be reversed and the case remanded for further proceedings.[15]

*Reversed and remanded.*

---

11. This case thus stands in contrast with *Price v. United States, supra* note 7, in which sufficient provocation could not be inferred either from the government's evidence or from that of the defendant.

12. Two of the cases cited by the government to support its proposition ("[1] Only when there is some evidence that a defendant was provoked into committing the act which caused the death should the instruction be given, and then [2] only in conjunction with the instruction for voluntary manslaughter.") support only the former and not the latter of the asserted twin conditions. *Comber, supra,* 584 A.2d at 41 & n. 17; *United States v. Alexander, supra,* 152 U.S.App.D.C. at 391 n. 53, 471 F.2d at 943 n. 53. The last case invoked is *Morgan v. United States,* 363 A.2d 999, 1002 (1976), which likewise does not illuminate the issue. In *Morgan,* this court upheld a refusal to instruct on manslaughter as a lesser-included offense of second-degree murder, but made no necessary link one way or the other with a provocation instruction as a defense to second-degree murder.

13. "If it [charging on lesser included offense] is not requested by counsel, it is properly omitted by the trial judge...." *Id.; see also United States v. Cooper,* 812 F.2d 1283, 1288 (10th Cir. 1987) ("In some limited circumstances, it may be appropriate for a trial court to give instruc-

tions *sua sponte* even though the choice as to instructions should ordinarily lie with the parties"); *United States v. Seijo,* 537 F.2d 694, 698–99 n. 5 (2d Cir.1976) ("If the defense counsel does not request such a charge, its omission is not error"), *cert. denied,* 429 U.S. 1043, 97 S.Ct. 745, 50 L.Ed.2d 756 (1977).

14. The government weakly suggests that the doctrine of "transference," or transferred intent, is inapplicable in cases of provocation. We cannot agree. According to a classic formulation, "if A aims at B with intent to kill under circumstances which would make him guilty of voluntary manslaughter of B, but he hits and kills C instead, A is guilty of voluntary manslaughter." LAFAVE & SCOTT, SUBSTANTIVE CRIMINAL LAW § 3.12(d) (1986 ed.); *see also Tripp v. State,* 36 Md.App. 459, 374 A.2d 384, 389 (1977) (*except* for instances of transferred intent, defense of provocation is limited to cases where victim is provocateur).

15. In so doing, we follow prior appellate practice where an instruction on a lesser-included offense should have been, but was not, given. *See, e.g., Simmons v. United States,* 554 A.2d 1167 (D.C.1989). Neither party here has to this point suggested a different disposition in the event we found merit in the argument of in-

structional error. We therefore do not reach the other issues raised by appellant, which deal with matters whose reoccurrence is problematical in a new trial.