**Maurice LEE, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 03–CF–1319.

District of Columbia Court of Appeals.

Argued Oct. 22, 2008.

Decided Nov. 6, 2008.

Mindy A. Daniels, for appellant.

Suzanne G. Curt, Assistant United States Attorney, with whom Jeffrey A. Taylor, United States Attorney, and Roy W. McLeese III and Denise Chung, Assistant United States Attorneys, were on the brief, for appellee.

Before KRAMER and THOMPSON, Associate Judges, and FARRELL, Associate Judge, Retired.

---

FARRELL, Associate Judge, Retired:

Appellant (Lee) was found guilty by a jury of second-degree murder while armed for the stabbing death of Melvin Hairston. The main issue he raises, and the only one we decide, is whether the trial judge erred in refusing to instruct the jury on mitigating circumstances, *see* CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA (the Redbook), No. 4.19 B (2007 ed.), where evidence supported the instruction but neither party had requested (and the judge did not give) an instruction on the lesser included offense of voluntary manslaughter. *Bostick v. United States,* 605 A.2d 916 (D.C.1992), compels us to reverse Lee's conviction.

## I.

Viewed in the light most favorable to the government, the evidence permitted a conclusion beyond a reasonable doubt that Lee stabbed Hairston to death on July 24, 2002, in retaliation for what Lee thought was an earlier molesting of his minor daughter by Hairston. In particular, with Hairston standing nearby, eyewitness Thomas Gary heard the child tell Lee that Hairston had "lick[ed] me and kiss[ed] me." Gary then saw Lee approach Hairston and appear to "punch" him in the stomach, causing Hairston to scream "you stabbed me." Robert Perry, Lee's 11–year–old son, testified that he had seen his father holding a knife and then stab Hairston with it. Other eyewitnesses saw parts of the altercation and either confirmed that Lee had swung at Hairston or placed him on the scene in near proximity to Hairston, who died shortly afterward of a stab wound to the chest.

## II.

After the defense presented its evidence, the trial judge asked whether the parties were requesting an instruction on the lesser included offense of armed voluntary manslaughter. The judge believed that "the evidence support[ed]" the instruction, given the provocation Lee might have experienced from the report of molestation; but the judge had resolved "not [to] give it if neither party asks for it." Initially, defense counsel stated that he would "probably" want the instruction, but later (after talking with Lee) stated that the defense did not want it, and that he likewise would not argue "mitigation" in his closing.[1] The prosecutor, too, did not request the manslaughter instruction, and the judge therefore instructed only on second-degree murder and on the defense theory that another person (Bobby Smith) had killed Hairston.[2] Following the instructions, however, Lee's counsel pointed out to the judge that he had "[taken] out the mitigating circumstances language from the second degree murder [instruction]," which counsel viewed as an "element" of the charge: "certainly [counsel stated] I think that if this jury had rejected any of the defense's contentions, period, [it] may consider that element [*i.e.,* mitigating circumstances], which is a required element to second degree murder." The trial judge rejected this argument, stating his view that mitigating circumstances "[is] only a required element if you're seeking ... manslaughter.... Where there is no

---

1. Before the instructions, the judge pressed Lee's counsel on the point:

 [The judge]: ... [Y]ou're not going to argue that even if he did it ... this isn't a second degree murder; he had reasons to do it because he thought his daughter was in danger and had been harmed—

 [Defense counsel]: I'm not going to make those arguments.

2. The defense had adduced testimony, among other things, that Lee had told someone that Smith was the assailant and that Smith himself had admitted that "we" did the stabbing.

lesser included, there's no mitigation" and "the [c]ourt doesn't give that as an instruction."

## III.

█ Lee contends, relying on *Bostick, supra,* that the judge erroneously conflated the two issues of his (or the government's) entitlement to a lesser included offense instruction and Lee's entitlement to an instruction on mitigating circumstances when evidence fairly supported it. The government, while not disputing that Lee presented "some evidence" of mitigation,[3] argues that he has not preserved the issue and that, in any event, *Bostick* does not "compel" the conclusion that he was entitled to the instruction on mitigation. Lee has the better of the argument on both scores.

The government points out, correctly, that Lee initially assented when the judge asked whether his decision not to request a manslaughter instruction did not "also eliminate[ ] the concept of mitigating circumstances and . . . the requirement that the government prove no mitigating circumstances beyond a reasonable doubt." However, Lee's counsel ultimately thought better of this concession because, as we have seen, he complained of the omission before the jury retired, asserting that mitigation was an "element" of second-degree murder which the jury should be allowed to consider. The government's response that Lee was silent (and so waived his objection) when the judge then "explained his reasoning" (Br. for Appellee at 23)— *i.e.,* that mitigation is not an issue when no manslaughter instruction has been sought—does not persuade us. The trial judge understood Lee's desire for the instruction on mitigation, but disagreed with his claim of entitlement to it. Lee thus preserved the issue adequately for appeal, and we turn to the merits.

In *Bostick,* the defendant-appellant similarly claimed error in the judge's "refus[al] to include an instruction on provocation as part of the charge to the jury on . . . second degree murder," *Bostick,* 605 A.2d at 916, even though no instruction on voluntary manslaughter had been requested or given. In accepting this argument, the court pointed out that "sufficient evidence of provocation [had been] presented . . . to support the requested . . . instruction on mitigation of malice, malice being an essential element of second degree murder to be proved by the government." *Id.* at 918 (footnotes omitted) (citing *Comber v. United States,* 584 A.2d 26, 41 (D.C.1990) (en banc)). The court explained that, although "the absence of adequate provocation is not an element of second degree murder, its presence is a defense to that charge." *Id.*[4] Therefore, "[g]iven the evidence of provocation here, the corresponding [standard] instruction should have been given and the government should have been required to disprove mitigation." *Id.*[5] Indeed, the court found error

---

3. "[T]he prosecutor's obligation to disprove mitigation arises only when there is some evidence" of heat of passion caused by adequate provocation. *Bostick,* 605 A.2d at 918 (internal quotation marks omitted). The government acknowledges that there was "some evidence" of provocation.

4. *See also Mullaney v. Wilbur,* 421 U.S. 684, 696, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975) ("[T]he presence or absence of the heat of passion on sudden provocation . . . has been, almost from the inception of the common law of homicide, the single most important factor in determining the degree of culpability attaching to an unlawful homicide.").

5. The Redbook instruction the court referred to is as follows:

Mitigating circumstances exist where a person acts in the heat of passion caused by adequate provocation. Heat of passion includes rage, resentment, anger, terror and fear. A person acts upon adequate provocation if his/her action is provoked by con-

even though, unlike in the present case, the judge had told the jury "that a malicious act must be done 'without adequate provocation' . . . and that the killing must occur 'without circumstances serving to mitigate . . . the act.'" This was "insufficient," the court said, "where the defendant specifically requests the full instruction on provocation, including the requisite burden of proof on the government." *Bostick,* 605 A.2d at 918 n. 8.

Importantly, the court rejected the government's argument "that when the defendant is charged with second degree murder an instruction on provocation may be given only if an instruction on the lesser-included offense of voluntary manslaughter is also given," *id.* at 920:

> [T]he government has produced no authority in caselaw to support this proposition. . . . Had the trial court given the proposed instruction on provocation, either side might properly have requested the instruction on manslaughter as a lesser included offense under second degree murder according to its own tactical plan. However, the absence of such a request is irrelevant in evaluating the appropriateness of including language on mitigation of malice in instructing the jury on an offense to which mitigation is a defense. *Comber v. United States, supra.*

*Id.* at 920 (footnote omitted).

Regrettably, the *Bostick* decision has never made its way into the lengthy Redbook commentary accompanying the standard instructions on murder and manslaughter. As a result, the trial judge was influenced here by language in the commentary that appears to condition the need to instruct on mitigating circumstances on the presence in the case of a lesser included offense instruction on manslaughter. But *Bostick* rejected that proposition and is indistinguishable from this case, because here, as there, the refusal to instruct on mitigating circumstances denied the defendant the proper legal framework within which to have the jury evaluate the evidence of heat of passion caused by adequate provocation. *See Bostick,* 605 A.2d at 918 n. 8 (reversing because the jury had not been given "full instruction on provocation, including the requisite burden of proof on the government").

 The government finds significance in the fact that the *Bostick* court recognized a trial court's authority in "limited circumstances" to give a lesser included offense instruction *sua sponte. Id.* at 920 n. 13. The judge here, though, did not exercise any such authority, instead leaving it to the parties, "according to [their] own tactical plan[s]," *id.* at 920, whether to present the manslaughter charge to the jury. Of course, in light of Lee's request for the charge on mitigating circumstances, the judge could properly have allowed the prosecution to reconsider its decision regarding manslaughter. Also, the issue before us would be harder if the judge, exercising discretion, had declined Lee's request because of the risk of jury confusion from a last-minute major revision of the jury instructions to include both mitigation at Lee's request and manslaughter at the prosecutor's. But neither action took place. Instead the judge rejected Lee's request, contrary to *Bostick,* because no one had requested the man-

---

duct that would cause an ordinary, reasonable person in the heat of the moment to lose his/her self-control and act on impulse and without reflection. An act of violence or an immediate threat of violence may be adequate provocation, but a slight provocation, entirely out of proportion to the retali-ation, is not adequate provocation. Mere words, no matter how offensive, are not adequate provocation.

The government must prove beyond a reasonable doubt that there were no mitigating circumstances.

No. 4.19 B.

slaughter charge. Accordingly, we must reverse Lee's conviction.

In setting aside the conviction, *Bostick* "remanded for further proceedings," which it understood to mean a new trial (absent an intervening plea of guilty). *See id.* at 920–21 n. 15 (declining to consider additional claims of error involving "matters whose reoccurrence is problematical in a new trial"). Here we have considered, as an alternative, whether the government may be afforded the choice of either a new trial or accepting entry of a verdict on the lesser charge of armed voluntary manslaughter. *See generally, e.g., Gathy v.*

*United States,* 754 A.2d 912, 920 (D.C. 2000). We do not adopt that course, primarily because the government has not requested it alternatively in its brief. Without that request, we are not disposed to consider additional claims of error Lee has raised that cause some difficulty and that, as in *Bostick,* either will not or may not reoccur in a new trial.[6]

*Reversed and remanded for further proceedings.*

---

**6.** Specifically, Lee's claim that the "natural and probable consequences" instruction given as part of the aiding and abetting jury charge was plain error under *Wilson–Bey v. United States,* 903 A.2d 818 (D.C.2006), is a substantial one, in part because we know from the unusual verdict form the judge employed that one or more jurors found Lee guilty solely on the basis of aiding and abetting. Lee's additional argument that the evidence failed to support an instruction on aiding and abetting will or will not materialize again, depending on the evidence as it develops on retrial.