Glenn OWENS and Jamal Young, Appellants,

v.

UNITED STATES, Appellee.

Nos. 05–CF–444, 05–CF–520.

District of Columbia Court of Appeals.

Argued May 20, 2009.

Decided Oct. 8, 2009.

Jenifer Wicks, Washington, for appellant Owens.

Mindy A. Daniels for appellant Young.

Peter S. Smith, Assistant United States Attorney, with whom Jeffrey A. Taylor, United States Attorney at the time the brief was filed, and Roy W. McLeese III, Elizabeth Trosman, and June M. Jeffries, Assistant United States Attorneys, were on the brief, for appellee.

Before KRAMER and BLACKBURNE–RIGSBY, Associate Judges, and FARRELL, Senior Judge.

KRAMER, Associate Judge:

Appellant Glenn Owens was convicted of second-degree murder and appellant Jamal Young was convicted of aggravated assault in connection with the beating death of John Short. On appeal, Owens argues that the trial court committed reversible error by improperly instructing the jury on voluntary manslaughter, giving a special causation instruction, and failing to give a corrective instruction after comments made by a government witness about Owens' counsel during cross-examination. Young argues that the evidence

was not sufficient to sustain his conviction for aggravated assault. We affirm the convictions of both appellants.

## I. Factual Background

On October 9, 2002, Gary Cunningham, Owens, and Young assaulted John Short in the 200 block of Adams Street, Northeast. There was testimony that the assailants struck Short repeatedly and forcefully with their fists and jumped on him. Short walked away from the altercation with assistance. After a witness called 911, an ambulance took Short to Howard University Hospital for emergency treatment. Later that day, he died. Dr. Marie–Lydie Pierre–Louis, Interim Chief Medical Examiner for the District of Columbia, testified that Short's death was caused by "blunt impact with compression of abdomen, fractures of ribs, injury to spleen, pancreas and stomach."

Owens, Young, and Cunningham were charged with second-degree murder in connection with Short's death. Cunningham pleaded guilty to voluntary manslaughter prior to trial. Owens and Young went to trial. The jury found Owens guilty of second-degree murder and Young guilty of the lesser-included offense of aggravated assault. This appeal followed.

## II. Jury Instructions

Owens argues that the trial court committed reversible error by (1) erroneously instructing the jury on voluntary manslaughter, (2) failing to instruct the jury on involuntary manslaughter, and (3) giving a special causation instruction. Owens also argues that the trial court committed reversible error by failing to give a corrective instruction after Howard DeShields, a government witness, accused Owens' counsel of identifying him as a government witness to other inmates during a visit to the jail.

### A. Standard of Review

■ "Where no objection is made to an instruction, we review for plain error." *Williams v. United States,* 858 A.2d 984, 991–92 (D.C.2004) (citation omitted).

> Under the plain error standard ... [a defendant] not only must establish error, but also that the error is plain and affects substantial rights. If he satisfies these three hurdles, he must then show either a miscarriage of justice, that is, actual innocence; or that the trial court's error seriously affected the fairness, integrity or public reputation of judicial proceedings.

*Id.* at 998 (citations and internal quotation marks omitted).

### B. Manslaughter Instructions

■ The jury was instructed on second-degree murder and the lesser-included offenses of voluntary manslaughter, aggravated assault, and assault. Owens argues that the trial court should have instructed the jury on involuntary manslaughter rather than voluntary manslaughter. "A lesser-included offense instruction is warranted when (1) all elements of the lesser offense are included within the offense charged, and (2) there is a sufficient evidentiary basis for the lesser charge." *Donaldson v. United States,* 856 A.2d 1068, 1073 (D.C.2004) (citations and internal quotation marks omitted).

■ The government argues that Owens' claim should be reviewed only for plain error because he did not object to the final instructions. Owens replies that his written proposed instructions, which included a misdemeanor involuntary manslaughter instruction, though not a voluntary manslaughter instruction, preserved the objection to the jury instructions as they were given. However, where a party submits proposed jury instructions, but the

trial court—without further discussion of the point—gives instructions different than those requested, the error is not preserved if the party fails to object to the final jury instructions. *See Williams, supra,* 858 A.2d at 990–91 (plain error review appropriate where appellant initially raised concerns about an instruction but failed to object to the final instruction); *Wilson v. United States,* 785 A.2d 321, 326 & n. 6 (D.C.2001) (plain error review appropriate where appellant raised concerns about whether injuries were serious enough to constitute aggravated assault, but failed to request an instruction on the definition of "serious bodily injury" or object when one was not given). Owens' submission of written proposed instructions was not sufficient to preserve an objection.[1] Since Owens failed to object to the final jury instructions, we review those instructions only for plain error.

According to Owens, the trial court's failure to instruct the jury on involuntary manslaughter was error because

> the refusal to provide a lesser-included offense instruction may leave the jury with only two alternatives: conviction of the "greater" offense or acquittal. "[T]he unavailability of the third option of convicting on a lesser included offense may encourage the jury to convict for an impermissible reason-its belief that the

defendant is guilty of some serious crime and should be punished."

*Donaldson, supra,* 856 A.2d at 1074 (quoting *Beck v. Alabama,* 447 U.S. 625, 642, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980)).

In this case, however, the jury was not faced with the options of conviction for second-degree murder or outright acquittal; it also could have convicted for the lesser-included offenses of voluntary manslaughter, aggravated assault, or assault. It is true that, as the government concedes and the record appears to show, there was no evidence of mitigating circumstances before the jury and so the voluntary manslaughter instruction was improper. *See id.* at 1073 ("[A] homicide constitutes voluntary manslaughter where the perpetrator kills with a state of mind which, but for the presence of legally recognized mitigating circumstances, would render the killing murder ....") (citation omitted). But, although voluntary manslaughter did not constitute the kind of intermediate option required by *Donaldson, see Schad v. Arizona,* 501 U.S. 624, 648, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991) ("*Beck* would [not] be satisfied by instructing the jury on just any lesser included offense, even one without any support in the evidence."), that does not help Owens because another "significant lesser offense" was present in the form of aggravated assault, having a maximum penalty of ten years imprisonment.

1. In the case law on which Owens relies in arguing that his submission of proposed instructions preserved his objection, we found that objections were preserved only because counsel clearly stated to the trial court that there was a problem with the instructions. *See Lee v. United States,* 959 A.2d 1141, 1143 (D.C.2008) (holding that appellant preserved an objection where after the instructions were read, he argued that the trial court had erroneously taken out the mitigating circumstances language from the second degree murder instruction); *Comber v. United States,* 584 A.2d 26, 53 n. 47 (D.C.1990) (en banc)

("The government contends that appellant Hayward never objected to the wording of the voluntary manslaughter instruction, and that we must review that contention under the plain error standard. It is uncontested, however, that Hayward vigorously requested an involuntary manslaughter instruction, a request denied by the trial court."). Here, Owens submitted proposed instructions, but otherwise made no argument to the trial court that an involuntary manslaughter instruction was necessary and a voluntary manslaughter instruction was inappropriate.

D.C.Code § 22–404.01(b) (2001); *Donaldson, supra,* 856 A.2d at 1075. While Owens argues that aggravated assault was not a true intermediate option because the victim died, this argument is belied by the fact that Owens' co-defendant, Young, was convicted of aggravated assault although the government's theory at trial was that both appellants were equally culpable in Short's death. Thus, viewed especially through the prism of plain error analysis, the aggravated assault instruction provided the jury with the requisite intermediate option, which they chose to exercise in the case of Young and to reject in the case of Owens.

In *Donaldson, supra,* the court stated:

the jury [was] not faced with an all-or-nothing choice between the [greater] offense and innocence. An intermediate option between the greater offense and acquittal diminishes the harm in any error because it would be remarkable for the jury, believing a defendant to be not guilty of the greater offense but guilty of an uncharged offense, to nonetheless convict the defendant of the greater offense even though a significant lesser offense is available to the jury.

856 A.2d at 1075 (citations and internal quotation marks omitted). While Owens wanted an instruction on involuntary manslaughter, "[t]he fact that the jury's intermediate option is a different lesser-included offense than desired by the defendant does not diminish the reliability of the jury's conviction on a 'greater' offense." *Id.* Accordingly, there was no plain error, because the jury was not faced with an all-or-nothing choice calling into question the basic fairness of the trial.

## C. Causation Instruction

■ Owens also argues that the trial court erred by instructing the jury that

A person causes the death of another person if his actions are a substantial factor in bringing about death *and if death is a reasonably foreseeable consequence of his actions. Death is reasonably foreseeable if it is something which should have been foreseen as being reasonably related to the defendant's actions.* The government must prove causation beyond a reasonable doubt.

Owens argues that "[t]he emphasized portion of [this] instruction reduced the government's burden of proof on the homicide counts, permitting the jury to convict appellant of murder based on a finding consistent with involuntary manslaughter." While Owens acknowledges that he requested the same instruction he now objects to, he argues that the request was made "in the context of a reasonable expectation of an instruction on criminal negligence involuntary manslaughter as a lesser included offense of second degree murder." But Owens failed to object to the final jury instructions even though he was aware at that point that no involuntary manslaughter instruction had been or would be given.

Owens' claim of error is thus barred because he requested the instruction that was given. "We have repeatedly held that a defendant may not take one position at trial and a contradictory position on appeal." *Brown v. United States,* 627 A.2d 499, 508 (D.C.1993) (holding that "[b]ecause defense counsel specifically asked the court not to give an instruction on this point, we will not consider appellant's present claim that the court erred in failing to give it."). Moreover, if we applied plain error analysis, the result would be the same: Owens has not shown how the causation instruction undermined (as he says it did) the requirement for the government to prove the malice necessary for conviction of second-degree murder, on which the jury was also instructed.

### D. Corrective Instruction

■ Owens also argues that the trial court committed reversible error by failing to provide a corrective instruction after Howard DeShields, a government witness, accused Owens' counsel of identifying him as a government witness to other inmates during a visit to the jail. On cross-examination, the following exchange between DeShields and Owens' counsel took place:

Counsel: Now, you and I actually saw each other on Friday; correct?

. . .

DeShields: You know it. You were trying to provoke something, but you weren't going get it. [sic]

. . .

DeShields: Tell the whole story. For one, you was in the office with [Cunningham] pointing through a glass window at me.

Counsel: I was pointing at you?

DeShields: Yeah. You all was—You stayed on purpose so he can pick me out to show me to you.

. . .

Counsel: Why do you think [Cunningham] was pointing me out to you?

DeShields: Who knows? The dude done done all type of stuff. The dude done threatened my life, the dude done told dudes to kill me. Who knows, man? You know what I'm saying? Who knows? You standing here trying to cross me up on all this and that, but it ain't going [to] change the fact that your man done beat this young dude to death, beat that gay dude to death. See what I'm saying? So you can cross me up all you want.

Owens argues that the trial court erred by not giving a corrective instruction stating that DeShields' accusations were irrelevant and should be disregarded. Although Owens' counsel drafted a proposed instruction, the trial court failed to give it. But neither at that point nor when the trial court gave its final instructions did Owens object. Accordingly, we review his claim only for plain error.

After DeShields initially accused defense counsel of pointing him out, counsel continued to engage DeShields in a lengthy cross-examination with many follow-up questions about his thoughts about their encounter on the previous Friday. By doing so, Owens' counsel invited much of the troublesome testimony. "Courts are especially reluctant to reverse for plain error when it is 'invited.' " *Cowan v. United States,* 629 A.2d 496, 503 (D.C.1993) (citation omitted).

We dealt with a somewhat similar situation in *Gatlin v. United States,* 925 A.2d 594 (D.C.2007), in which a government witness accused defense counsel of trying to get him to commit perjury on a previous occasion. In that case, the prosecutor had heard the witness make the accusation previously, but did not think he would do so in open court. *Id.* at 602. Defense counsel wanted to go on the stand to testify that the witness' accusation was false, but the trial court instead opted to permit defense counsel to conduct additional cross-examination of the witness. *Id.* at 603. We concluded that the defendant "was not prejudiced by the absence of defense counsel's testimony or 'flat contradiction' of [the witness'] accusation; reasonable jurors could infer that [the] accusation was false." *Id.* at 604. We examined "the importance of [the challenged] testimony, the extent to which [the witness'] credibility was impeached, and the independent evidence of [the appellant's] guilt" and concluded that there was no reasonable likelihood that the accusation could have affected the jury's verdict. *Id.* (citation omitted). The government witness was the key government

witness, but not the only one. Additionally, "a fair and reasonable reading of the record reveal[ed] that [the witness'] credibility as to the accusation against defense counsel was grievously impeached." *Id.* at 605.

As in *Gatlin,* DeShields was the key government witness, but he was not the only government witness who testified that Owens beat Short. Additionally, the trial court told Owens' counsel that "I thought from your pursuit of the matter on cross everyone on the jury understood that you were in disagreement with [DeShields'] characterization of it." Unlike in *Gatlin,* we review here only for plain error.[2] We cannot conclude that the trial court's failure to issue a corrective instruction after DeShields' testimony constituted plain error given that Owens' counsel invited much of the testimony of which he now complains, that it was clear from the cross-examination that defense counsel disagreed with DeShields' characterization of events, and that there was other independent evidence that Owens committed second-degree murder.

### III. Sufficiency of the Evidence: Aggravated Assault

■ Finally, Young argues that the evidence was insufficient to sustain a conviction for aggravated assault and supported nothing more than a conviction for simple assault.

A person commits the offense of aggravated assault if:

(1) By any means, that person knowingly or purposely causes serious bodily injury to another person; or

(2) Under circumstances manifesting extreme indifference to human life, that person intentionally or knowingly engages in conduct which creates a grave risk of serious bodily injury to another person, and thereby causes serious bodily injury.

D.C.Code § 22–404.01(a). " '[S]erious bodily injury' is construed to mean injury that involves a substantial risk of death, unconsciousness, extreme physical pain, protracted and obvious disfigurement, or loss or impairment of a bodily member or function." *Jackson v. United States,* 970 A.2d 277, 279 (D.C.2009) (citations omitted). Young argues that there was no evidence to establish that he caused Short serious bodily injury or that he intended to cause Short seriously bodily injury, knew that it would result from his conduct, or knowingly engaged in conduct that created a grave risk of serious bodily injury or manifested an extreme indifference to life.

■ On the contrary, Dezma Chase, Cunningham's mother, and Donnice Tyler, both of whom witnessed the assault and identified appellants at trial, both testified that Young repeatedly and forcefully struck Short with his fists. Chase specifically testified that Young "hit [Short] with his fist in the chest." Chase also testified that Young jumped on Short.[3] "Intent can rarely be proved directly, and must often be discerned from the surrounding circum-

---

2. Owens claims that the trial court failed to give a corrective instruction, but his counsel again failed to object at trial to the court's failure to give such an instruction. In *Gatlin,* the alleged error was that the trial court refused to permit the appellant's counsel to withdraw as counsel and testify himself to rebut the witness's testimony, and defense counsel objected at trial to the court's refusal to do so. 925 A.2d at 602–03.

3. Although Chase testified at trial that when she said that Young was "jumping on" Short in her grand jury testimony, she meant "yelling at him, not physically jumping on him," the jury could have discounted this explanation. *See McCoy v. United States,* 781 A.2d 765, 769 n. 3 (D.C.2001) ("[T]he jury is always free to accept parts of a witness' testimony and reject other parts.") (citation omitted).

stances." *Gray v. United States*, 585 A.2d 164, 165 (D.C.1991) (citation omitted). Given the testimony from Chase and Tyler, the evidence was sufficient to show that, at a minimum, Young knowingly engaged in conduct which created a "substantial risk of . . . extreme physical pain" to Short. *See Bolanos v. United States*, 938 A.2d 672, 677 (D.C.2007) (citation omitted). Such evidence satisfies the *mens rea* element of the aggravated assault statute.

Further, although the evidence also had to be sufficient to show that Young caused Short serious bodily injury, it met that test under standards of "co-principal" liability adopted by our decisions. Although no aiding and abetting instruction was given, no such instruction is necessary "in order for the acts of one principal in furtherance of a crime to be imputed to another principal." *Hazel v. United States*, 353 A.2d 280, 283 (D.C.1976).[4] The government presented sufficient evidence that Young committed one of the necessary elements of aggravated assault, i.e., "knowingly engag[ing] in conduct which create[d] a grave risk of serious bodily injury,"[5] as a co-principal with Owens and Cunningham. Therefore, the acts of Owens and Cunningham that caused serious bodily injury are imputed to Young. *See Green v. United States*, 608 A.2d 156, 159 (D.C.1992) (appellant could be convicted of unlawful possession of cocaine under accomplice liability theory even though he had not "actually or constructively possessed the drugs" and had merely led an undercover police officer to the person who sold him the drugs); *Hazel, supra*, 353 A.2d at 283. Since the evidence is sufficient to show that the joint actions of Young, Owens, and Cunningham caused Short's death, it is sufficient to support Young's conviction for aggravated assault.

*Affirmed.*

---

4. "There may be joint principals in the first degree, as where two or more cause the death of another by beating . . . or other means, in which both, or all, participate." R. Perkins, PERKINS ON CRIMINAL LAW 656 (2d ed.1969).

5. *See* D.C.Code § 22–404.01(a).